# Martha Ingle
## CLERK OF COURTS
### Walton County, Florida
### Clerk of the Courts

New Search

## Case Progress Dockets

| CASE NUMBER | FILE DATE | CASE TYPE | STATUS |
|---|---|---|---|
| 662011CA000104CAXXXX [11000104CA] | 02/07/2011 | Other | PENDING |

[**PLAINTIFF**=NEWMONT GHANA GOLD LIMITED **DEFENDANT**=HILLER SYSTEMS INC **DEFENDANT**=ADAMS CONSULTING SERVICES INC **DEFENDANT**=PROENERGY INTERNATIONAL SERVIC **DEFENDANT**=PLAINVILLE ELECTRICAL PRODUCTS **PLAINTIFF**=GOLD FIELDS GHANA LIMITED **PLAINTIFF**=ANGLOGOLD ASHANTI (GHANA)LIMIT **PLAINTIFF**=GOLDEN STAR (BOGOSO/PRESTEA)LI ]
[**JUDGE**=WELLS, KELVIN C]

**LAST DOCKET DATE**=03/14/2011

[Court Events | Finance Info | Docket Info]

| ACTION DATE | TEXT |
|---|---|
| 03/14/2011 | PRODUCTS CO INC ON 2/22/11 VW |
| 03/14/2011 | AFFIDAVIT OF CORPORATE SERVICE ON: DAVIS & ADAMS CONSULTING |
| 03/14/2011 | SERVICES INC ON 2/14/11 VW |
| 03/14/2011 | AFFIDAVIT OF CORPORATE SERVICE ON:PROENERGY INTERNATIONAL |
| 03/14/2011 | SERVICES INC ON 2/23/11 VW |
| 03/14/2011 | AFFIDAVIT OF CORPORATE SERVICE ON: PLAINVILLE ELECTRICAL |
| 02/07/2011 | CIVIL COVER SHEET; SS |
| 02/07/2011 | COMPLAINT; SS |
| 02/07/2011 | SUMMONS ISSUED TO PLAINVILLE ELECTRICAL PRODUCTS CO INC;SS |
| 02/07/2011 | SUMMONS ISSUED TO PROENERGY INTERNATIONAL SERVICES INC;SS |
| 02/07/2011 | SUMMONS ISSUED TO DAVIS & ADAMS CONSULTING SERVICES INC;SS |
| 02/07/2011 | SUMMONS ISSUED TO HILLER SYSTEMS INC; SS |

**EXHIBIT**
"A"

IN THE CIRCUIT COURT OF THE FIRST
JUDICIAL CIRCUIT IN AND FOR
WALTON COUNTY, FLORIDA

CASE NO. 11CA000104Y

NEWMONT GHANA GOLD LIMITED;
GOLD FIELDS GHANA LIMITED;
ANGLOGOLD ASHANTI (GHANA)
LIMITED; and GOLDEN STAR (BOGOSO/
PRESTEA) LIMITED,

        Plaintiffs,

v.

HILLER SYSTEMS, INC.; DAVIS &
ADAMS CONSULTING SERVICES, INC.;
PROENERGY INTERNATIONAL
SERVICES, INC., and PLAINVILLE
ELECTRICAL PRODUCTS CO., INC. a/k/a
PEPCO,

        Defendants.

_____/

Date Rec'd _2-10-11_ Time Rec'd _8am_

Served _JEFF CANON_ Title _OWNER_

Date Served _2/23/11_ Time _9:11_

Server Name _Robert E Jackson II_

Server Signature _Robert E Jackson II_

Server ID Number _____

## CIVIL ACTION SUMMONS

THE STATE OF FLORIDA:
To Each Sheriff of Said State:

    YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the
Complaint in this action upon the Defendant:

Serve:     **PROENERGY INTERNATIONAL SERVICES, INC.**

Serve At:     Registered Agent: Jeff Canon, 2031 Adams Road, Sedalia, MO 65301 or 2001
ProEnergy Blvd., Sedalia, MO 65301

Or serve such other individual as may be authorized by F.S. Ch. 48.

### IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on
you to file a written response to the attached Complaint with the Clerk of this Court and to file a
written response with the Clerk of this Court. A phone call will not protect you. Your written
response, including the case number given above and the names of the parties, must be filed if
you want the Court to hear your side of the case. If you do not file your response on time, you
may lose the case, and your wages, money, and property may thereafter be taken without further
warning from the Court. There are other legal requirements. You may want to call an attorney
right away. If you do not know an attorney, you may call an attorney referral service or a legal
aid office (listed in the phone book).

128

If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a copy of your written response to the Plaintiff's Attorney named as follows:

JOSHUA R. GOODMAN, ESQ.
COZEN, O'CONNOR
Wachovia Financial Center, Suite 4410
200 S. Biscayne Boulevard
Miami, Florida 33131
(305) 704-5940

*February 7, 2011*

CLERK, Circuit Court

By

Deputy Clerk

**IMPORTANTE**

Usted ha sido demandado legalmente. Tiene 20 Dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autre obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

**In accordance with the Americans with Disabilities Act of 1990, persons needing a special accommodation to participate in this proceeding should contact the Clerk of Court administration Office (904) 819-3601, no later than seven (7) days prior to the proceeding. If hearing impaired, telephone Florida Relay Service at 1-800-955-8771 for assistance.**

-2-

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR WALTON COUNTY, FLORIDA

NEWMONT GHANA GOLD LIMITED,
GOLD FIELDS GHANA LIMITED,
ANGLOGOLD ASHANTI (GHANA)          :
LIMITED, AND GOLDEN STAR           :          GENERAL CIVIL DIVISION
(BOGOSO/PRESTEA) LIMITED
                                   :

                Plaintiffs,        :          CASE NO.: 11CA 000104

        vs.                        :

HILLER SYSTEMS, INC., DAVIS &      :
ADAMS CONSULTING SERVICES, INC.,
PROENERGY INTERNATIONAL            :
SERVICES, INC., and PLAINVILLE
ELECTRICAL PRODUCTS CO., INC. a/k/a :         **DATE** 2/23/11 **TIME** 9:11
PEPCO
                                   :          **INITIAL** RSGL **BADGE#**_____
                Defendants.
                                   :

                                   :

_____    :


## COMPLAINT

    Plaintiffs, NEWMONT GHANA GOLD LIMITED, GOLD FIELDS GHANA

LIMITED, ANGLOGOLD ASHANTI (GHANA) LIMITED and GOLDEN STAR

(BOGOSO/PRESTEA) LIMITED, by and through their undersigned counsel, herein bring suit

against defendants HILLER SYSTEMS, INC., DAVIS & ADAMS CONSULTING SERVICES,

INC., PROENERGY INTERNATIONAL SERVICES, INC., and PLAINVILLE ELECTRICAL

PRODUCTS CO., INC. a/k/a PEPCO, and allege as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, Newmont Ghana Gold Limited (hereinafter "NGGL"), is a corporation duly organized and existing under the laws of the Republic of Ghana, and having its principal place of business at C825/26 Lagos Avenue, East Legon, Accra, Ghana.

2.      Plaintiff, Aglogold Ashanti (Ghana) Limited (hereinafter "AGA"), is a corporation duly organized and existing under the laws of the Republic of Ghana, and having its principal place of business at Gold House, Patrice Lumumba Road, Accra, Ghana.

3.      Plaintiff, Gold Fields Ghana Limited (hereinafter "GFGL"), is a corporation duly organized and existing under the laws of the Republic of Ghana, and having its principal place of business at No. 7 Amilcar Cabral Road, Airport Residential Area, Accra, Ghana.

4.      Plaintiff, Golden Star (Bogoso/Prestea) Limited (hereinafter "GSBPL"), is a corporation duly organized and existing under the laws of the Republic of Ghana, and having its principal place of business at Level II, No. 1 Milne Close off Dr. Amilcar Cabral Road, Airport Residential Area, Accra, Ghana.

5.      At all times material hereto, plaintiffs NGGL, AGA, GOGL and GSBPL (hereinafter referred to collectively as the "Consortium"), are and/or were members of a Consortium which purchased, developed and owned a power plant facility located in Tema, Ghana, and known as the Ghana Mining Industry Reserve Power Plant and/or Mining Reserve Plant (hereinafter referred to as the "MRP").

6.      The aforesaid Consortium referred to in Paragraph No. 5 hereof, is and was at all times material hereto an unincorporated entity established for the purpose of its  members jointly carrying out the purchase, transport, construction, installation and transfer of the MRP.

7.      Defendant Hiller Systems, Inc. (hereinafter "Hiller Systems") is a corporation duly organized and existing under the laws of the Commonwealth of Virginia, and having its principal place of business located at 42 Executive Boulevard, Chesapeake, Virginia 23320.

2

8.    At all times herein mentioned, defendant Hiller Systems was engaged, *inter alia*, in the business of designing, installing, testing and commissioning fire protection and fire suppression systems.

9.    At present and at all times herein mentioned, including with respect to Hiller Systems work performed as is more fully referred to herein, defendant Hiller Systems maintained and conducted business from offices located in the State of Florida, and at 3245 West Fairfield Drive, Pensacola, Florida.

10.    Defendant Davis & Adams Consulting Services, Inc. (hereinafter "DACON") is a corporation duly organized and existing under the laws of the State of Florida, and having its principal place of business in Florida, including offices located at 501 North Spring Street, Crestview, Florida 32536.

11.    At all times material hereto, defendant DACON was engaged, *inter alia*, in the business of performing professional engineering services and engineering work, from offices located at 501 North Spring Street, Crestview, Florida 32536.

12.    Defendant ProEnergy International Services, Inc. (hereinafter "ProEnergy"), is a corporation duly organized and existing under the laws of the State of Missouri, and having its principal place of business located at 2031 Adams Road, Sedalia, Missouri 65301.

13.    At all times material hereto, defendant ProEnergy was engaged, *inter alia,* in the business of operating and maintaining industrial power plants.

14.    At present and at all times mentioned herein, including with respect to ProEnergy's work performed as more fully referred to herein, defendant ProEnergy maintained and conducted business from offices located in the State of Florida, and at 3245 West Fairfield Drive, Pensacola, Florida.

3

15.     Defendant Plainville Electrical Products Company a/k/a PEPCO (hereinafter "PEPCO"), is a corporation duly organized and existing under the laws of the State of Connecticut, and having is principal place of business located at 435 Lake Avenue, Bristol, Connecticut 06010.

16.     At all times material hereto, defendant PEPCO was engaged, *inter alia*, in the design, manufacture and installation of control systems and control devices, including control systems and control devices used at and within power plants, and controls for fire and/or related to suppression systems.

17.     At all times mentioned here, defendant PEPCO conducted business operations within the State of Florida.

18.     This Court has subject matter jurisdiction of this action in that plaintiff's damages are in excess of $15,000.00, and the defendants in this action have or have had places of business in Walton County, and/or conduct business in Walton County.

19.     As to the foreign defendant(s), this Court has personal jurisdiction over that (these) defendant(s) under Florida's "Long Arm Statute," Section 48.193(1)(f)2, Florida Statutes Florida, in that: now and at or about the time of the events herein described took place, the defendants' products and/or services were marketed and/or sold in Florida.

20.     As to the foreign defendant(s), subjecting them to the jurisdiction of this Court does not offend traditional notions of fair play and substantial justice in that the defendant(s) purposefully availed itself (themselves) of the laws of the State of Florida by:

        (a)     advertising in and/or to the Florida market; and/or

        (b)     establishing channels for providing regular advice to users or consumers of its (their) product(s) and/or services in the State of Florida; and/or

        (c)     marketing products and/or services in the State of Florida; and/or

4

      (d)     shipping products to persons in the State of Florida for use by contractors, consumers and homeowners; and/or

      (e)     otherwise engaging in continuous and systematic contracts with the State of Florida as may be developed through discovery.

21.    Venue is proper before this Court pursuant to Florida Statutes §47.011 and §47.051 in that the causes of action below are brought against Defendants which conduct and/or have conducted business in Walton County.

## FACTUAL BACKGROUND

22.    The aforesaid Consortium consisting of NGGL, AGA, GOGL, and GSBPL, at all times hereto mentioned, owned and operated mining facilities in Ghana.

23.    Due to an anticipated shortage of electrical energy required to conduct their respective operations, the aforesaid plaintiffs in and about 2006 entered into an Agreement whereby said plaintiffs formed the aforesaid Consortium which is an unincorporated entity established for the purpose of jointly carrying out a project of purchasing, transporting, constructing, installing, operating and then transferring a mining reserve power plant (hereinafter referred to as "MRP") in Tema, Ghana.

24.    Thereafter, the Consortium procured two turbine generators and associated equipment, which formed and/or constituted a power plant located on a barge, and said turbine generators were overhauled, and placed into operating condition, and then shipped to Ghana for installation at the MRP.

25.    On or about March 2007, the Consortium acting by and through one of its designated members, namely NGGL, entered into an agreement with defendant DACON wherein defendant DACON agreed to perform certain engineering work associated with the refurbishing of the turbine generator systems, their reassembly onsite in Ghana and their start up, and which engineering services included the redesign, refurbishing, upgrade and testing of a fire suppression system.

26.     Defendant DACON subcontracted portions of the MRP fire suppression system redesign, refurbishing, installation and testing work to defendant Hiller Systems.

27.     Defendant DACON also subcontracted to defendant PEPCO the redesign, refurbishing, installation and testing with respect to the control systems which were associated with the aforesaid fire suppression system.

28.     Defendants DACON, Hiller Systems and PEPCO during 2007, proceeded to perform, and did perform the aforesaid fire suppression system and/or controls redesign, refurbishing, installation and testing work.

29.     On or about September 30, 2007, the MRP was commissioned and at that time, defendants DACON, Hiller Systems and PEPCO represented and warranted to the Consortium that the aforesaid fire suppression system and its controls had been properly designed, engineered, refurbished, installed and tested, was a fully operable, reliable and effective fire suppression system.

30.     On or about June 2007, the Consortium entered into an Agreement with defendant ProEnergy wherein, *inter alia*, defendant ProEnergy agreed to operate and maintain the MRP for a period of six months, running from October 2007 through March 2008, at which time the Consortium was to transfer the MRP to the Volta River Authority which is Ghana's electrical generation authority.

31.     On or about October 16, 2007, the Consortium transferred the responsibility for operating and maintaining the MRP to defendant ProEnergy and thereupon defendant ProEnergy became obligated to safely and properly maintain and operate the MRP for a period of six (6) months.

6

32.     On or about September 30, 2007, the MRP was commissioned, and at that time, defendants DACON, Hiller Systems and PEPCO represented and warranted to the Consortium that the aforesaid fire suppression system and its controls had been properly designed, refurbished, engineered, installed and tested, and was a fully functional, reliable and effective fire suppression system.

33.     On or about February 8, 2008, a fire originated and occurred within the MRP, and more particularly at and within the MRP's Unit B turbine enclosure, wherein the aforesaid turbine generator system was housed, and which was to be protected by the aforesaid fire suppression system.

34.     On or about February 8, 2008 and upon the occurrence of the fire referred to in Paragraph No. 31 hereof, the aforesaid Unit B turbine enclosure's fire suppression system failed to properly function, and consequently failed to suppress and/or extinguish the fire.

35.     As a result of the fire and of the failure of the aforesaid fire suppression system referred to in Paragraphs Nos. 33 and 34 hereof, the fire spread and caused substantial damage and destruction to Unit B turbine enclosure, the equipment therein, including the turbine, and to adjacent structures and equipment.

36.     As a result of the incidents referred to in Paragraph Nos. 31 through 33 hereof, the Consortium sustained losses and/or incurred costs for repairs and/or replacements in a fair and reasonable amount in excess of $3 million.

## COUNT I.
## PLAINTIFFS V. HILLER SYSTEMS, INC. - NEGLIGENCE

37.     Plaintiffs incorporate herein by reference the allegations set forth in paragraphs Nos. 1 through 36 as though the same were set forth herein at length.

38.     The aforesaid failure of the fire suppression system to suppress and/or to
extinguish the fire and the resultant damage and destruction as referred to in Paragraphs Nos. 33
through 36 hereof was caused by the negligence, carelessness, negligent omissions, gross
negligence and recklessness of defendant Hiller Systems, acting through its duly authorized
agents, servants and employees in:

      (a)     failing to competently redesign, refurbish, upgrade, install and/or test the
fire suppression system;

      (b)     failing to equip the system with an adequate number of heat detectors;

      (c)     failing to properly locate the heat detectors;

      (d)     failing to so design, install, set up and test the fire suppression system so
that in the event of a fuel leak, the flow of fuel would be immediately shut
down;

      (e)     failing to so redesign, refurbish, upgrade, install and test the fire
suppression system, so that, in the event of a fire, the cooling fan would
shut down, and the dampers would be closed;

      (f)     failing to redesign, refurbish, install set up and/or test the fire suppression
system in accordance with applicable standards, codes and the regulations;

      (g)     failing to take the reasonably necessary precautions which a prudent
person would take to prevent loss or damage to the plaintiffs' property;

      (h)     failing to perform its work properly and thereby creating a highly
dangerous and hazardous condition which the defendant knew and/or
should have known would cause harm to the plaintiffs;

      (i)     violating applicable codes, standards, regulations and requisite
professional conduct; and

      (j)     otherwise failing to use due care under the circumstances.

39.     By reason of the aforesaid negligence, carelessness and negligent omissions on
the part of the defendant Hiller Systems, the aforesaid fire and damages referred to in Paragraphs
Nos. 31 through 34 took place.

8

WHEREFORE, Plaintiffs demand judgment against Defendant Hiller Systems, Inc. in an amount in excess of $3,000,000, together with interest and the costs of this action.

## COUNT II.
### PLAINTIFFS V. HILLER SYSTEMS, INC. - BREACH OF CONTRACT

40.     Plaintiffs incorporate herein by reference the allegations set forth in Paragraphs Nos. 1 through 36 as though the same were set forth herein at length.

41.     Defendant Hiller Systems had a contractual obligation, owed to the plaintiffs as third party beneficiaries, to properly redesign, refurbish, install, set up and test the aforesaid fire suppression system, so that the system would effectively function to suppress and extinguish a fire at an incipient stage.

42.     Defendant Hiller Systems breached its aforesaid obligation to properly design, install and test the aforesaid fire suppression system.

43.     The aforesaid spread of the fire and the resulting damages as referred to in Paragraphs Nos. 33 through 36 hereof, was the direct and proximate result of the aforesaid breach of contractual obligations on the part of defendant Hiller Systems.

WHEREFORE, Plaintiffs demand judgment against Defendant Hiller Systems, Inc. in an amount in excess of $3,000,000, together with interest and the costs of this action.

## COUNT III.
### PLAINTIFFS V. HILLER SYSTEMS, INC. - BREACH OF WARRANTY

44.     Plaintiffs incorporate herein by reference the allegations set forth in Paragraphs Nos. 1 through 36  and 40 through 43 as fully as though the same were set forth herein at length.

45.     Defendant Hiller Systems expressly warranted, to and for the benefit of the plaintiffs, that the fire suppression system was redesigned, refurbished, installed and tested so that it would function properly to suppress and extinguish incipient fires.

9

46.     Defendant Hiller Systems impliedly warranted, to and for the benefit of the plaintiffs, that the aforesaid fire suppression system was redesigned, refurbished, installed and tested so that it would properly function to suppress and extinguish a fire at its incipient stage.

47.     Defendant Hiller Systems breached its aforesaid express and implied warranties.

48.     The aforesaid fire suppression system's failure, the spread of the fire and the resultant damages were the direct and proximate result of the aforesaid breach of warranties on the part of defendant, Hiller Systems.

WHEREFORE, Plaintiffs demand judgment against Defendant Hiller Systems, Inc. in an amount in excess of $3,000,000, together with interest and the costs of this action.

## COUNT IV.
## PLAINTIFFS V. DAVIS AND ADAMS CONSULTING SERVICES, INC.
## NEGLIGENCE

49.     Plaintiffs incorporate herein by reference the allegations set forth in Paragraphs Nos. 1 through 36 as fully as though the same were forth herein at length.

50.     The aforesaid failure of the fire suppression system to suppress and extinguish the fire and the resultant damage and destruction as referred to in Paragraphs Nos. 33 through 36 hereof were caused by the negligence, carelessness, negligent omissions, gross negligence and recklessness on the part of defendant DACON acting through its duly authorized agents, servants and employees in:

(a)     failing to competently redesign, refurbish, install and/or test the fire suppression system;

(b)     failing to equip the system with an adequate number of heat detectors;

(c)     failing to properly locate the heat detectors which were installed;

(d)     failing to so redesign, refurbish, install, set up and test the fire suppression system so that in the event of a fuel leak, the flow of fuel would be immediately shut down;

10

(e)     failing to so redesign, refurbish, install and test the fire suppression system, so that, in the event of a fire, the cooling fan would shut down, and the dampers would be closed;

(f)     failing to design, install and/or test the fire suppression system in accordance with applicable standards, codes and the regulations;

(g)     failing to take the reasonably necessary precautions which a prudent person would take to prevent loss or damage to the plaintiffs' property;

(h)     failing to perform its work properly and thereby creating a highly dangerous and hazardous condition which the defendant knew and/or should have known would cause harm to the plaintiffs;

(i)     violating applicable codes, standards, regulations and requisite professional conduct; and

(j)     otherwise failing to use due care under the circumstances.

51.     By reason of the aforesaid negligence, carelessness, negligent omissions and recklessness on the part of the defendant, DACON, the fire and damages referred to in Paragraphs Nos. 33 through 36 took place.

WHEREFORE, Plaintiffs demand judgment against Defendant Davis and Adams Consulting Services, Inc. in an amount in excess of $3,000,000, together with interest and the costs of this action.

## COUNT V.
## PLAINTIFFS V. DAVIS AND ADAMS CONSULTING SERVICES, INC.
## BREACH OF CONTRACT

52.     Plaintiffs incorporate hereby reference the allegations set forth in Paragraphs Nos. 1 through 36 as though the same were set forth herein at length.

53.     Defendant DACON had a contractual obligation to properly redesign, refurbish, install and test the aforesaid fire suppression system, so that the system would effectively operate to suppress and extinguish a fire at an incipient stage.

54.     Defendant DACON breached its aforesaid obligation to properly redesign, refurbish, install and test the fire suppression system.

11

55.    The spread of the fire and the resulting damages as referred to in Paragraphs Nos.

33 through 36 hereof, were the direct and proximate result of the aforesaid breach of contractual

obligations on the part of defendant DACON.

WHEREFORE, Plaintiffs demand judgment against Defendant  Davis and Adams

Consulting Services, Inc. in an amount in excess of $3,000,000, together with interest and the

costs of this action.

## COUNT VI.
## PLAINTIFFS V. DAVIS AND ADAMS CONSULTING SERVICES, INC.
## BREACH OF WARRANTY

56.    Plaintiffs incorporate hereby reference the allegations set forth in Paragraphs Nos.

1 through 36  and 52 through 55 as though the same were set forth herein at length.

57.    Defendant DACON expressly warranted that the fire suppression system was

redesigned, refurbished, installed and tested so as to function properly for the purpose of

suppressing and/or extinguishing incipient fires.

58.    Defendant DACON impliedly warranted that the aforesaid fire suppression

system was redesigned, refurbished, installed and tested so that it would properly function as to

suppress and extinguish a fire at its incipient stage.

59.    Defendant DACON breached its aforesaid express and implied warranties.

60.    The aforesaid fire suppression system's failure, the spread of the fire and the

resultant damages were the direct and proximate result of the aforesaid breach of warranties on

the part of defendant, DACON.

WHEREFORE, Plaintiffs demand judgment against Defendant  Davis and Adams

Consulting Services, Inc. in an amount in excess of $3,000,000, together with interest and the

costs of this action.

12

## COUNT VII.
## PLAINTIFFS V. PEPCO -- NEGLIGENCE

61.     Plaintiffs incorporate herein by reference the allegations set forth in Paragraphs Nos. 1 through 36 as full as though the same were forth herein at length.

62.     The aforesaid failure of the fire suppression system to suppress and extinguish the fire and the resultant damage and destruction as referred to in Paragraphs Nos. 33 through 36 hereof were caused by the negligence, carelessness, negligent omissions, gross negligence and recklessness of defendant PEPCO acting through its duly authorized agents, servants and employees in:

(a)     failing to competently redesign, reinstall and/or test the fire suppression system's controls;

(b)     failing to equip the system with an adequate and properly programmed controls;

(c)     failing to properly program the controls as to enable the system to operate in a proper sequence;

(d)     failing to so redesign, refurbish, install, set up and test the fire suppression system's controls, so that in the event of a fuel leak, the flow of fuel would be immediately shut down;

(e)     failing to so redesign, refurbish, install and test the fire suppression system and its controls, so that, in the event of a fire, the cooling fan would shut down, and the dampers would be closed;

(f)     failing to redesign, refurbish, install and/or test the fire suppression system controls in accordance with applicable standards, codes and the regulations;

(g)     failing to take the reasonably necessary precautions which a prudent person would take to prevent loss or damage to the plaintiffs' property;

(h)     failing to perform its work properly and thereby creating a highly dangerous and hazardous condition which the defendant knew and/or should have known would cause harm to the plaintiffs;

(i)     violating applicable codes, standards, regulations and requisite professional conduct; and

(j)     otherwise failing to use due care under the circumstances.

13

63.     By reason of the aforesaid negligence, carelessness, negligent omissions and recklessness on the part of the defendant, PEPCO, the fire and damages referred to in Paragraphs Nos. 33 through 36 took place.

WHEREFORE, Plaintiffs demand judgment against Defendant PEPCO in an amount in excess of $3,000,000, together with interest and the costs of this action.

## COUNT VIII.
## PLAINTIFFS V. PEPCO - BREACH OF CONTRACT

64.     Plaintiffs incorporate herein by reference the allegations set forth in Paragraphs Nos. 1 through 36 and 61 through 63 as fully as though the same were set forth herein at length.

65.     Defendant PEPCO had a contractual obligation, owed to the plaintiffs as third party beneficiaries to properly redesign, refurbish, install and test the aforesaid fire suppression system controls, so that the system would effectively operate to suppress and extinguish a fire at an incipient stage.

66.     Defendant PEPCO breached its obligations to properly redesign, refurbish, install and test the fire suppression system controls.

67.     The spread of the fire and the resulting damages as referred to in Paragraphs Nos. 33 through 36 hereof, was the direct and proximate result of the aforesaid breach of contractual obligations on the part of defendant PEPCO.

WHEREFORE, Plaintiffs demand judgment against Defendant PEPCO in an amount in excess of $3,000,000, together with interest and the costs of this action.

## COUNT IX.
## PLAINTIFFS V. PEPCO - BREACH OF WARRANTY

68.     Plaintiffs incorporate herein by reference the allegations set forth in Paragraphs Nos. 1 through 36 and 61 through 67 as though the same were set forth herein at length.

14

69.     Defendant PEPCO expressly warranted to and for the benefit of the plaintiffs that the fire suppression system controls which it redesigned, refurbished, installed and tested would function properly so as to enable the fire suppression system to suppress and extinguish incipient fires.

70.     Defendant PEPCO impliedly warranted to and for the benefit of the plaintiffs that the aforesaid fire suppression system controls were redesigned, refurbished, installed and tested so that the fire suppressions system would properly function as to suppress and extinguish a fire at its incipient stage.

71.     Defendant PEPCO breached its aforesaid express and implied warranties.

72.     The aforesaid fire suppression system failure, the spread of the fire and the resultant damages were the direct and proximate result of the aforesaid breach of warranties on the part of defendant, PEPCO.

WHEREFORE, Plaintiffs demand judgment against PEPCO in an amount in excess of $3,000,000, together with interest and the cost of this action.

## COUNT X.
## PLAINTIFFS V. PROENERGY INTERNATIONAL SERVICES
## IN NEGLIGENCE

73.     Plaintiffs incorporate herein by reference the allegations set forth in Paragraphs Nos. 1 through 6, 12 through 14 and 18 through 36.

74.     The occurrences and resultant damages referred in Paragraphs Nos. 33 through 36, were caused by the negligence, carelessness, negligent omissions, gross negligence and recklessness on the part of defendant ProEnergy Systems, by and through its agents, servants and/or employees in:

(a)     failing to properly and competently maintain the aforesaid turbine generator system;

(b)     failing to periodically inspect the fuel hoses and fuel connections on the aforesaid turbine generator systems;

(c)     failing to detect, discover and correct a fuel leak in the aforesaid turbine generator system;

(d)     failing to test and ensure that the fire suppression system would function properly and effectively in the event of a fire;

(e)     failing to take the reasonably necessary precautions which a prudent person would take to prevent loss or damage to the plaintiffs' property;

(f)     failing to perform its work properly and thereby creating a highly dangerous and hazardous condition which the defendant knew and/or should have known would cause harm to the plaintiffs;

(g)     violating applicable codes, standards, regulations and requisite professional conduct; and

(h)     otherwise failing to use due care under the circumstances.

75.     Due to the aforesaid negligence, carelessness, negligent omissions and recklessness on the part of defendant ProEnergy, the aforesaid fire and resultant damages took place.

WHEREFORE, plaintiffs demand judgment against Defendant ProEnergy International Systems, Inc., in an amount in excess of $3,000,000, together with interests and the costs of this action.

## COUNT XI.
## PLAINTIFFS V. PROENERGY SERVICES INTERNATIONAL
## BREACH OF CONTRACT

76.     Plaintiffs incorporate herein by reference the allegations set forth in Paragraphs Nos. 1 through 6, 12 through 14, and 18 through 36.

77.     Defendant ProEnergy had a contractual obligation to properly maintain, and operate the aforesaid MRP and its turbine systems, and to periodically inspect and periodically test associated fire suppression systems, so that a fire would not occur or so that any fire which did occur would be effectively suppressed and extinguished.

78.     Defendant ProEnergy systems breached its aforesaid contractual obligations referred to in Paragraph No. 77 hereof.

79.     The fire and resultant damages referred to Paragraphs Nos. 33 through 36 hereof, was the direct and proximate result of the aforesaid breach of contractual obligations on the part of defendant ProEnergy.

WHEREFORE, plaintiffs demand judgment against Defendant ProEnergy International Systems, Inc., in an amount in excess of three million dollars ($3,000,000), together with interests and the costs of this action.

## PLAINTIFFS V. PROENERGY SERVICES INTERNATIONAL
## BREACH OF WARRANTY

80.     Plaintiffs incorporate herein by reference the allegations set forth in Paragraphs Nos. 1 through 6, 12 through 14, 18 through 36, and 73 through 79.

81.     Defendant ProEnergy expressly warranted that it was competent to maintain and operate the MRP and its turbine generator systems, and that it would properly and safely maintain and operate the MRP and its turbine generator systems.

82.     Defendant ProEnergy impliedly warranted that it was competent to maintain and operate the MRP and its turbine generator systems, and that it would properly and safely maintain and operate the MRP and its turbine generator systems.

17

83.    Defendant ProEnergy breached its aforesaid express and implied warranties.

84.    The aforesaid fire and resultant damages referred to in Paragraphs Nos. 33 through 36 were the direct and proximate result of the aforesaid breach of warranties on the part of defendant ProEnergy.

WHEREFORE, plaintiffs demand judgment against Defendant ProEnergy International Services, Inc., in an amount in excess of three million dollars ($3,000,000), together with interests and the costs of this action.

COZEN O'CONNOR

BY: _____
Joshua R. Goodman, Esquire
Wachovia Financial Center
200 South Biscayne Boulevard
Suite 4410
Miami, FL 33131-2303
Phone: 305-704-5940
Fax: 866-248-2897
jgoodman@cozen.com
Attorneys for Plaintiffs
FL BAR #0149276

Of counsel:

COZEN O'CONNOR
ELLIOTT R. FELDMAN, ESQUIRE
GERARD F. BELZ, JR., ESQUIRE
1900 Market Street
Philadelphia, PA 19103

Attorneys for Plaintiffs

MIAMI\107644\1 276706.000

18